Filed 2/26/13  In re Josiah H. CA3

NOT **TO** **BE** **PUBLISHED**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| In re JOSIAH H., a Person Coming Under the Juvenile Court Law. | C071928 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. No. JD231479) |
| Plaintiff and Respondent, | |
| v. | |
| CHRISTINA H., | |
| Defendant and Appellant. | |

Mother, Christina H., appeals from the juvenile court order terminating her parental rights to 22-month-old Josiah H. (the minor).  She contends the trial court erred in finding that the beneficial parental relationship exception to adoption did not apply.  We shall affirm.

1

## FACTUAL BACKGROUND

Two days after he was born in April 2011, the minor was taken into protective custody based on allegations mother had a developmental disability that impaired her ability to adequately protect and care for the minor and that her parental rights to her four other children had previously been terminated. The minor was placed in a foster home with two of his half siblings. He was declared a dependent of the juvenile court and reunification services were ordered. As part of the effort to provide reunification services to mother, a psychological evaluation was performed by psychologist Sidney Nelson, Ph.D. Dr. Nelson noted mother's intellectual capabilities, abstract reasoning, conceptual thinking, common sense reasoning, and social judgment were substantially impaired; she functioned within the mild range of mental retardation. These impairments limited mother's ability to learn, retain and utilize new information provided in counseling or parenting classes. Mother's impairments were a significant, chronic and long-term condition, not expected to change with the provision of services, and not conducive to providing a safe home for a young child. Accordingly, Nelson concluded mother would not be able to benefit sufficiently from reunification services to permit the minor to return safely to her custody.

Despite Dr. Nelson's reservations, mother participated in some services and regularly visited with the minor twice a week. By January 2012, mother had made some progress in services; however, she had not completed her domestic violence classes and had not completed individual counseling, becoming threatening to the therapist and refusing further counseling. She completed the parenting class, but upon testing, with significant assistance from the social worker, she scored only 30 percent on the parent education survey. In parenting coaching with an infant, she was incapable of responding to the baby's cues, could not learn how much formula was necessary to prepare a bottle, and forgot to secure the infant on a changing table before walking away. The social worker concluded mother could not benefit from additional parenting coaching. The

2

juvenile court found mother had not made sufficient progress in reunification and it was unlikely the minor could be returned to her within the six-month statutory time frame. Accordingly, reunification services were terminated and the matter was set for a Welfare and Institutions Code section 366.26 hearing.[1]

Originally, mother had visits with the minor scheduled twice a week for one hour. Between April and November 2011, she missed six visits. Upon termination of reunification services, mother's visits were reduced to twice a month in February 2012 and then to once a month in May 2012. Mother's visits were sporadic during this period. She frequently failed to confirm or follow through with scheduled visits. When she did visit, the minor would look at her and play games. He generally reacted happily when he saw mother.

The minor was doing well, although he was slow meeting developmental milestones. He had some mild developmental delays of his feeding abilities and poor endurance for eating, as well as physical developmental delays. He was receiving weekly therapy to address these delays, which required significant familial involvement. He remained placed in the foster home that had successfully adopted two of his older siblings and the foster parents were committed to adopting him. Emotionally and behaviorally, the minor was developing appropriately. He preferred his foster parents to other adults and was developing healthy emotional connections to them, their children, and their extended circle of family and friends. His foster parents provided for his daily needs and primary emotional connection.

At the contested section 366.26 hearing, mother objected to the termination of her parental rights. She claimed she had maintained contact with the minor and it would be in his best interest not to terminate her parental rights.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

3

The court found by clear and convincing evidence the minor was adoptable.  The court noted although there were some physical problems, they were not of such a scope so as to impede his adoptability.  The court found termination of parental rights would not be detrimental to the minor.  Accordingly, the beneficial relationship exception to adoption did not apply.  Parental rights were terminated.

## DISCUSSION

Adoption must be selected as the permanent plan for an adoptable child and parental rights must be terminated unless "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" due to an enumerated exception to adoption.  (§ 366.26, subd. (c)(1)(B).)  One such exception to termination of parental rights is if "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i); *In re Celine R.* (2003) 31 Cal.4th 45, 53.)  Mother contends the trial court erred in not finding the beneficial parental relationship exception to adoption applied.  We disagree.

Initially, there has been some disagreement in the appellate courts as to which standard of review applies in reviewing a juvenile court's determination regarding a statutory exception to adoption.  (See *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1315; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1527-1528.)  Many courts have reviewed such findings for substantial evidence, with a few courts utilizing an abuse of discretion standard.  (Compare, e.g., *In re Megan S.* (2002) 104 Cal.App.4th 247, 250-251, *In re L. Y. L.* (2002) 101 Cal.App.4th 942, 947, *In re Zachary G.* (1999) 77 Cal.App.4th 799, 809, *In re Derek W.* (1999) 73 Cal.App.4th 823, 827 and *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576 with *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1342 and *In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 449.)  However, as several courts have also noted, the practical differences between these standards of review are not significant in

4

the context of reviewing termination orders, as each standard accords broad deference to the trial court's judgment. (See, e.g., *In re C.B.* (2010) 190 Cal.App.4th 102, 123; *In re Scott B.* (2010) 188 Cal.App.4th 452, 469; *In re Jasmine D., supra*, 78 Cal.App.4th at p. 1351.) Because our conclusion in the present matter would not change regardless which of these standards of review we applied, and as addressing the issue here will not assist in resolving the split of authority, we simply acknowledge the varying views and turn to the merits.

It is mother's burden to establish the beneficial relationship exception to adoption applies. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1343.) Mother contends she met the first prong of the exception in that she maintained regular visitation and contact with the minor. Although there is some evidence mother was inconsistent in her visitation, we will assume mother satisfied this prong of the test. However, she did not meet the burden of establishing that she and the minor shared a beneficial parent/child relationship such that termination of that relationship would be detrimental to the minor.

A beneficial relationship is one that "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H., supra,* 27 Cal.App.4th at p. 575.) The existence of a beneficial relationship is determined by considering a number of factors, including the age of the child, the amount of time the child spent in the parent's custody, the positive or negative effect of interaction between the parent and the child, and the child's particular needs. (*In re Amber M.* (2002) 103 Cal.App.4th 681, 689.) However, neither a loving relationship (*In re Jeremy S.* (2001) 89 Cal.App.4th 514, 523) nor the derivation of some benefit from continued parental contact (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466) is enough to establish this exception.

Here, the minor was 16 months old at the time of the section 366.26 hearing. He has never lived with mother. He was removed from her custody when he was two days

5

old and has spent all of his life with his foster family. The minor has some special needs which require "attention and judgment skills," as well as active participation by his family in his counseling and therapy. Mother does not have attention and judgment skills, and has a significantly impaired ability to learn and utilize information provided in counseling or classes. While the minor was generally happy around mother, he preferred his foster parents to other adults and his foster family provided for his daily needs and emotional connection. His foster family had also previously adopted two of the minor's half siblings. Based on the record in this case, there was no error in the juvenile court's determination that the parental bond exception to adoption did not apply.

## DISPOSITION

The order of the juvenile court is affirmed.


          BUTZ          , J.


We concur:


      BLEASE        , Acting P. J.


      NICHOLSON    , J.