Filed 8/31/15  In re D.F. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re D.F. et al., Persons Coming Under the Juvenile Court Law. | B260685 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK07297) |
| Plaintiff and Respondent, | |
| v. | |
| TIFFANY J., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Terry Troung, Commissioner.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, Melinda A. Green, Deputy County Counsel, for Plaintiff and Respondent.

_____

Tiffany J. (Mother) appeals from the juvenile court's order taking jurisdiction over her two children. Mother contends there was not substantial evidence to support jurisdiction because there was no causal connection between her involvement in prostitution and any risk of harm to the children. She further contends the juvenile court prejudicially erred when it denied a request for a continuance at the adjudication hearing. We affirm.

## FACTS

Mother has two children with Father: three-year-old D.F., Jr., and two-year-old Da.F. Father and Mother have been separated since 2013, and the children have been in Father's care since January 2014. Father is not listed on the children's birth certificate, though Mother has signed an affidavit acknowledging he is their father. Father and the children live with the paternal grandparents, who help care for the children. Father knows Mother is homeless and making "bad decisions" so he refuses to allow her to visit the children alone or have custody of them. Mother has no concerns with Father's care of the children and believes he is taking good care of them. Three prior referrals against Mother for neglect and physical and emotional abuse were deemed inconclusive or unfounded.

On August 27, 2014, Mother was observed looking into cars in a parking structure on the UCLA campus. When questioned by the campus police, Mother admitted, "I'm not going to lie, we are escorts." Mother further explained, "People call us and we show up and make love." She clarified, "it's not like I sell my pussy, I make love."

Mother was found with a 16-year-old girl, Brittany D., and Christopher Hensley, at UCLA.[1] Brittany, an emancipated minor from Utah, reported to a children's social

---

[1] Mother submitted hearsay objections under Welfare and Institutions Code section 355 to certain evidence contained in the Los Angeles Department of Children and Family Services reports. Specifically, Mother objected to hearsay statements made by Hensley and Brittany to the children's social workers and to the police. Mother also objected to admission of the text messages found on Hensley's and Mother's phones. These objections were sustained by the juvenile court at the jurisdictional hearing. As a result, these statements and text messages may not be the sole support for the juvenile court's

2

worker that Mother picked her up from Las Vegas to have sex with adult men. Brittany also reported to the police that Mother paid for her bus ticket from Las Vegas to Los Angeles. Brittany, Mother, and Hensley had been staying at a motel together. Text messages between Mother and Hensley revealed Hensley was Mother's pimp, though they both denied it. Mother reported to Hensley the money she made and Hensley would request she send it to him to pay the rent on the motel. Hensley also requested photos of Mother and Brittany so he could place an advertisement. A google search of Mother's phone number showed an advertisement for "Just Arrived 2 Beautiful Petite Mixed Hotties." In one text to Hensley, Mother reported she was "scared because pimps are ganging up on her and tell[ing] her they will take her away the next time they see her." Mother told the police she prostituted herself to support her children.

On September 5, 2014, Mother pled guilty to loitering with intent to commit prostitution in violation of Penal Code section 653.22, subdivision (a). She was released on her own recognizance on September 13, 2014. When interviewed by the children's social worker on September 3, 2014, Mother denied any criminal activity for her current offense.

A Welfare and Institutions Code[2] section 300, subdivision (b)[3] petition was filed, alleging Mother was an abuser of marijuana and alcohol, which rendered her incapable of

jurisdiction. (§ 355, subd. (c)(1) ["If a party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study, the specific hearsay evidence shall not be sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based…"].) Both parties detail these hearsay statements in their statement of facts on appeal. As they are not the sole basis for jurisdiction, we may rely on them to provide necessary background facts as well as provide additional support for our ruling.

[2]     All further section references are to the Welfare and Institutions Code unless otherwise specified.

[3]     A child falls under subdivision (b)(1) of section 300 when he or she "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to

3

providing regular care for her children.  At the September 10, 2014 detention hearing, the juvenile court deemed Father to be the presumed father and found a prima facie case for detaining the children had been established.  It ordered the children released to Father and monitored visits for Mother.  The petition was amended on October 9, 2014, to add allegations under section 300, subdivisions (b)(1) and (d)[4] that Mother's prostitution endangered the children's physical and emotional health and places them at risk.  Mother was mailed a copy of the amended petition and provided notice that a jurisdictional hearing was set for October 23, 2014.  The Department of Children and Family Services report was also included in the mailing.

The matter was adjudicated on October 23, 2014.  Mother failed to appear despite receiving notice of the hearing.  The juvenile court denied Mother's counsel's request for a continuance to locate Mother.  The juvenile court found by clear and convincing evidence that a substantial danger of emotional and physical damage existed which justified the children's removal from Mother's custody under subdivision (b) of section 300.  However, the juvenile court dismissed the same allegations as they applied to the risk of sexual abuse under subdivision (d).  The juvenile court also dismissed the alcohol and substance abuse allegations.  The children were placed in Father's custody with monitored visitation by Mother.  Finding Mother was not entitled to reunification services, the court terminated jurisdiction.  Mother timely appealed.

adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse.  No child shall be found to be a person described by this subdivision solely due to the lack of an emergency shelter for the family."

[4]     A child falls under subdivision (d) of section 300 when he or she "has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."

4

**DISCUSSION**

**I.  Substantial Evidence of Harm**

Mother contends the jurisdictional order must be reversed because there is no causal connection between her involvement with prostitution and a risk of harm to the children.  We disagree.

In sum, the three elements for jurisdiction under section 300, subdivision (b) are: "'(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the [child], or a "substantial risk" of such harm or illness.'" (*In re Savannah M*. (2005) 131 Cal.App.4th 1387, 1396, quoting *In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.)  "The third element, however, effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur)." (*In re Savannah M., supra*, 131 Cal.App.4th at p. 1396; *see also In re S. O.* (2002) 103 Cal.App.4th 453, 461 [past conduct probative "if there is reason to believe that the conduct will continue"].)  The paramount concern of any dependency proceeding is the child's best interests.  (*In re Josiah Z.* (2005) 36 Cal.4th 664, 673.)

We "'review the whole record in the light most favorable to the [order] below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could [rule in the same manner].' [Citation.]" (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496; *People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 681.)  We focus on the whole record, not isolated bits of evidence.  (*People v. Slaughter* (2002) 27 Cal.4th 1187, 1203.)  We presume the existence of every fact the trier of fact reasonably could deduce from the evidence that supports the order.  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

The record here establishes there was sufficient evidence to support the juvenile court's order taking jurisdiction over the children.  Section 300, subdivision (b) requires only a "substantial risk" the child will suffer serious physical harm or illness because of the parent's activities.  Here, Mother pled guilty to loitering with intent to commit

5

prostitution. Yet, she believed she had not committed any crime. She also told the police she needed the funds to support her children. However, Father reported Mother has not visited the children since her release on September 13, 2014. The text messages suggest Mother's occupation is dangerous; she tells Hensley she fears for her safety after receiving threats from other pimps. Mother also does not balk at engaging minors in prostitution; she was found with 16-year old Brittany at UCLA and admitted they were escorts.

Mother relies on *In re B.T.* (2011) 193 Cal.App.4th 685 to support her position. *In re B.T.* does not require us to reach a different conclusion. There, a mother was engaged in a sexual relationship with her 15-year-old neighbor, which resulted in the birth of their child. The mother was arrested for unlawful sexual intercourse and for committing lewd and lascivious acts. (*Id.* at pp. 688-689.) As a result, the newborn was detained as well as the mother's three older children. (*Id.* at p. 689.) Jurisdiction was asserted over the four children and they were placed with their respective fathers. (*Id.* at p. 691.) Although the newborn was placed with her father, who was in the 10th grade at the time, the paternal grandmother provided most of the care for the baby. The father had no means to support himself or the baby. (*Ibid.*) Mother appealed the orders relating to the baby only, challenging the sufficiency of the evidence.

On appeal, the court reversed the jurisdictional and dispositional orders, finding there was not substantial evidence to support a finding of potential or current harm. Instead, the evidence confirmed the mother was loving and well able to take proper care of a small child. (*In re B.T.,* at p. 693.) Though the mother had lapses in judgment and impulse control, there was no evidence those lapses, occurring before the baby was even born, would endanger the baby. (*Ibid.*)

Unlike in *In re B.T.,* where the mother's lapse in judgment and impulse control issues occurred prior to the baby being born and it did not appear they would recur, there is a continuing risk to the children in this case. Mother has made no indication she intends to stop being a prostitute or that she understands it is unlawful. That the juvenile court dismissed count d-1, alleging a substantial risk of sexual abuse as a result of

6

Mother's prostitution and pimping, does not render the children safe from a risk of harm, particularly where Mother herself has been threatened by other pimps.

## II. The Request For Continuance

Mother next contends the juvenile court's denial of her request for continuance violated section 322 and Rules of Court, rule 5.672, subd. (a), which both provide an automatic one day continuance of a detention hearing upon any motion of the child, parent, or guardian. We are not persuaded.

At the adjudication hearing on October 23, 2014, Mother's counsel requested a continuance "to see why she's not present." The juvenile court denied the request, noting that notice was properly given to Mother about the hearing. Mother characterizes the October 23, 2014 hearing as a combined detention, jurisdiction, and disposition hearing because the juvenile court indicated it would set a new detention hearing after the first amended petition was filed. When the first amended petition was filed, the juvenile court failed to set a separate detention hearing, instead continuing the detention hearing[5] to the adjudication date. We find Mother has forfeited the issue. Although she requested a continuance to see why Mother was not present, she failed to cite to section 322 as a basis for the continuance. Thus, the juvenile court was denied the opportunity to consider whether section 322 applied. (*In re E.A.* (2012) 209 Cal.App.4th 787, 790.)

## DISPOSITION

The challenged jurisdictional and dispositional orders are affirmed.

BIGELOW, P.J.

We concur:

FLIER, J.              GRIMES, J.

---

[5]     The minute order indicates the "arraignment goes over to the adjudication date." We interpret this to mean the detention hearing was reset for the same date as the adjudication, given that an arraignment is not appropriate in a non-criminal juvenile dependency matter.

7