Filed 10/28/25  In re O.G. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re O. G., a Person Coming Under the Juvenile Court Law. | B341033 <br><br> (Los Angeles County Super. Ct. Nos. 24CCJP01819, 24CCJP01819A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>     Plaintiff and Respondent. <br>       v. <br> M. G., <br><br>     Appellant. | |

APPEAL from order of the Superior Court of Los Angeles County, Nancy Ramirez, Judge.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

## MEMORANDUM OPINION[1]

Father M.G. appeals from a juvenile court exit order terminating dependency jurisdiction over his daughter, O. G., and awarding sole physical custody to her mother. Father argues that the court erred by removing O. G. from his physical custody, requiring monitored visits until he "completed" counseling, and ordering him to pay for a professional visitation monitor. We affirm.

## BACKGROUND

The dependency court took jurisdiction over O. G. pursuant to section 300, subdivision (b)(1), sustaining an allegation that O. G. was at risk due to father's history of mental and emotional problems, including bipolar disorder; manic and erratic behavior; verbal aggression and paranoid statements; and noncompliance with mental health services and medication.[2]

---

[1] We resolve this case by memorandum opinion. (Cal. Stds. Jud. Admin., § 8.1.) We do not recite the full factual and procedural background because our opinion is unpublished, and the parties are familiar with the facts of the case and its procedural history. (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851 [unpublished opinion merely reviewing correctness of trial court's decision "does not merit extensive factual or legal statement"].) Undesignated statutory references are to the Welfare and Institutions Code.

[2] The court also issued a restraining order protecting mother from father but did not include O. G. as a protected party.

After a continued, contested disposition hearing at which father testified, the court declared O. G. a dependent, ordered her removed from father, and released her to mother. Because mother was not in need of services and O. G. was safe with her, the court found that it was in O. G's best interest to terminate jurisdiction.

Over father's objection, the court granted sole physical custody to mother and granted both parents joint legal custody, with tie-breaking authority to mother. It ordered thrice weekly monitored visits for father, with a professional monitor paid for by father; father made no objections regarding the visitation order. The order stated that monitored visits were necessary because father "has not completed (1) individual Counseling to address case issues including mental health with a licensed therapist/intern supervised; and (2) Mental Health Counseling which includes a psychological assessment, psychiatric evaluation and taking all prescribed psychotropic medication." Father's counsel objected to the mental health counseling as "duplicative and not needed," but "submit[ted] on individual counseling to address all case issues."

## DISCUSSION

### I. Removal

Father contends the order removing O. G. from his custody was not supported by substantial evidence, and reasonable means were available to maintain her in his care. We disagree.

Removal under section 361, subdivision (c)(1) is appropriate when a court finds, by clear and convincing evidence, "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the

3

minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."  "In determining whether to remove a child, the court 'may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention.'"  (*In re Miguel J.* (2025) 114 Cal.App.5th 635, 649.)  "'The parent need not be dangerous and the minor need not have been harmed before removal is appropriate.  The focus of the statute is on averting harm to the child.'"  (*Ibid.*)

We review a juvenile court's dispositional orders, including removal, for substantial evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773; see also *In re Miguel J.*, *supra*, 114 Cal.App.5th at p. 649.)  We view the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders.  (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.)  We do not reweigh the evidence or exercise independent judgment.  (*Ibid.*)

Because removal findings must be supported by clear and convincing evidence, we consider whether the "record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 996.)  "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206.)

Substantial evidence supported removal here. Father had angry outbursts, directed at mother and service providers.  His medical providers found him "intimidating," and social workers

4

were unable to get him to answer straightforward questions. He was verbally aggressive and erratic with various aid providers, whom he claimed were conspiring against him, and yelled at them for long periods of time while O. G. cried in the background. Father also told a social worker that he would get a gun because no one was doing anything to help him. The dependency court reasonably could conclude that such unpredictable and volatile behavior placed preschool-aged O. at risk. (Contra *In re A.L.* (2017) 18 Cal.App.5th 1044, 1051 [finding no substantial evidence to support jurisdiction where 16-year-old child "was well aware" of parent's mental illness and "knew what to do when Mother was in a manic state"].)

Additionally, there was substantial evidence that father struggled to meet O. G.'s needs. Father told an aid worker that he had not fed or changed O. G. in four days. O. was "unkempt and unclean" and wearing dirty, fecal-stained underwear when she was detained. Father also expressed concerns about O. G's mental health—concerns shared by mother and DCFS—yet refused to consent to treatment and "create[d] unnecessary barriers to his child getting the services she needs."

Father downplayed and denied concerns about his mental health. Though he previously had been diagnosed with bipolar disorder and prescribed medication, father "adamantly" denied the diagnosis and other mental health issues. Father additionally denied engaging in manic and erratic behavior and making paranoid statements, despite numerous reports to the contrary, and did not follow up on appointments that he scheduled. "One cannot correct a problem one fails to acknowledge." (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197.) Father's contention that O. could have remained in his care with

5

a safety plan "to address any concerns if he had another mental health episode" accordingly is not persuasive. (See *In re A.F.* (2016) 3 Cal.App.5th 283, 293 [due to parent's "refusal to acknowledge her substance abuse and its potential effect to her judgment and on the minor, there was no way to guarantee the minor's physical health, well-being, and protection while living with" parent.])

## II.    Exit Order Provisions

Father contends the exit order was an abuse of discretion because it ordered him to "complete" individual counseling and required him to pay for a professional visitation monitor. DCFS responds that father forfeited these arguments by failing to object below. We agree.

An appellant generally forfeits the right to claim error as grounds for reversal when he or she fails to object in the trial court. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222.) Principles of forfeiture apply in dependency litigation and are intended to encourage parties to bring errors to the juvenile court's attention, so that they may be corrected. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

Here, father expressly submitted on the order regarding individual counseling and did not object to the requirement that he pay for professional visitation monitoring services. Father claims his testimony that monitored visitation was unnecessary preserved the issue, and his general objection to the custody order "also implied that he did not submit or agree to the court's requirement that his visits remain monitored." Yet neither father's testimony nor his general objection apprised the juvenile court of the concerns he now asserts or afforded the court an opportunity to address them before terminating jurisdiction. (See

6

*In re E.A.* (2012) 209 Cal.App.4th 787, 790 ["General objections are insufficient to preserve issues for review."].)  Father has forfeited his arguments.

Though we have discretion to excuse forfeiture, we use "special care" when exercising that discretion in dependency matters.  (*In re S.B.*, *supra*, 32 Cal.4th at p. 1293.)  As a general rule, we do so "rarely and only in cases presenting an important legal issue." (*Ibid.*)  The issues father attempts to raise—his ability to "complete" individual counseling and pay for a professional monitor—are factual questions, not legal ones.  Since no specific objection was made in the juvenile court, the record contains limited material pertinent to these issues.  We accordingly decline to exercise our discretion.

If father believes he has adequately addressed case issues in individual counseling or is unable to pay for a professional monitor, he is "permitted to raise those claims in the family court, and a family court judge would make the final decision" on those issues.  (*In re Chantal S.* (1996) 13 Cal.4th 196, 214; see also *In re A.B.* (2014) 230 Cal.App.4th 1420, 1439 [upon termination of dependency jurisdiction, "the noncustodial parent's interests in custody and visitation can be heard in the family law court"]; § 302, subd. (d).)

**DISPOSITION**

The juvenile court order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


VAN ROOYEN, J.*


We concur:


ZUKIN, P. J.


TAMZARIAN, J.

---

\* Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


8